DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 INTRODUCTION {¶ 1} Two police officers standing on Clinton Nelson's front porch told him they smelled the odor of burnt marijuana coming from his house. According to them, he then agreed to show them where the marijuana was, but said they could not search his house. The officers handcuffed him, and, again according to the officers, he showed them to his dining room where, on a table, they found a small amount of marijuana at the bottom of a gallon freezer bag, digital scales, and a box of baggies. The officers arrested him and completed a "protective sweep" of *Page 2 
his house, during which they saw ammunition, another digital scale, what looked like an Ecstasy tablet, a bag of white powdery substance, and a gallon bag of marijuana. The officers obtained a search warrant, conducted a more thorough search, and seized the items they had seen during their "protective sweep," plus other drugs and drug-related items. Mr. Nelson moved to suppress all the evidence seized from inside his house. The trial court denied his motion to suppress, he pleaded no contest to twelve drug-related offenses, and the trial court found him guilty of those offenses. He has argued to this Court that his consent for the officers to enter his house was involuntary. This Court affirms the trial court's judgment because its finding that Mr. Nelson consented to the officers entering his house was not against the manifest weight of the evidence.
 BACKGROUND {¶ 2} On April 20, 2006, Mr. Nelson was living in a house on Roger Avenue in Akron. At about six o'clock that evening, there was a shooting at the corner of Dudley and Laird Streets, about 1½ blocks from Mr. Nelson's house. At about nine o'clock, Officer Donald Schismenos, who was still in the area investigating the shooting, was sitting in an unmarked car at the intersection of Dudley and Fulton Streets. He received a radio transmission that the shooters, including a named suspect, might be returning to the area in a red sedan or a white Lincoln. At about that same time, he saw a blue Camaro enter the intersection. He testified that the driver and passenger looked around and then "gun[ned] it," *Page 3 
eastbound on Fulton. Officer Schismenos followed, but did not attempt to stop them. The driver pulled the Camaro to the curb, blocking the driveway at 160 Fulton Street, and he and his passenger got out, looked at the officer, and "took off in half a run" east on Fulton toward Roger Avenue. Officer Schismenos continued east on Fulton and radioed other officers that two men had taken off on foot. He turned around at Roger Avenue, returned to where the Camaro was blocking the driveway, and began making arrangements to have it towed.
 {¶ 3} Upon receiving Officer Schismenos's radio transmission, Officer Darren McConnell, who was also in the area investigating the shooting, drove his cruiser north on Roger Avenue past where it intersects with Fulton Street. Some people from the neighborhood flagged him down and told him two or three men had run into the house at 146 Roger Avenue. As Officer McConnell approached the house, he saw Mr. Nelson standing in the front doorway. Three or four other officers arrived within a minute, and Officer McConnell asked Mr. Nelson to come out, but he instead slammed the door.
 {¶ 4} Officer McConnell knocked, and Mr. Nelson returned to the door and asked who was there. Officer McConnell told him it was the police, and Mr. Nelson opened the door. Officer McConnell asked Mr. Nelson to come out onto the front porch, and he did. Officer McConnell told Mr. Nelson the officers were investigating a shooting and repeatedly asked that other people in the house come *Page 4 
out. Each time he did, Mr. Nelson shouted to the people in the house not to come out. Eventually a second person, Mr. Nelson's brother, came out onto the porch.
 {¶ 5} About that same time, Officer Schismenos and two or three other officers arrived at the house. Officer Schismenos recognized Mr. Nelson as the driver of the Camaro, although Mr. Nelson denied that he had been the driver. Officer Schismenos checked the registration of an SUV parked in the house's driveway and determined that it and the Camaro were registered to the same person. Mr. Nelson then acknowledged that he had been driving the Camaro and that he did not have a driver's license.
 {¶ 6} Eventually the officers convinced the third person who was in the house to also come out onto the porch. Both Officer Schismenos and another officer who was there testified that, when this third person came out the front door, they smelled a strong odor of burnt marijuana. According to Officer Schismenos, he told Mr. Nelson he smelled marijuana and Mr. Nelson volunteered that he would show the officers where the marijuana was, but said that they could not search his house. The officers handcuffed Mr. Nelson, and, according to a number of the officers, he showed them to his dining room table where they found marijuana, digital scales, and a box of baggies. The officers testified that Mr. Nelson repeated that they could not search his house. They arrested him, conducted a "protective sweep" of his house during which they saw other drugs and drug related items, and then obtained a search warrant. Mr. Nelson moved to *Page 5 
suppress the items seized from his house, and the trial court denied his suppression motion.
 COERCION {¶ 7} Mr. Nelson's sole assignment of error is that the trial court incorrectly determined that he consented to the officers entering his home because his consent was involuntary. In the trial court, however, he did not claim that his consent was involuntary. Rather, he claimed that he had not told officers he would show them where the marijuana was and had not led them to his dining room table.
 {¶ 8} In the Memorandum in support of his motion to suppress, he wrote that "police entered the residence, without consent or a search warrant, and conducted a search of the premises." At the hearing on his suppression motion, on direct examination, he testified that he had not consented:
 Q. At any point in time during that contact with those police officers did you ever give them consent to enter your house or search it in any way?
 A. No, I did not.
On cross-examination, in response to the trial court's clarification of a question, he expanded his testimony:
 THE COURT: Sir, he asked did you take him into the home because of the weed? *Page 6 
 [MR. NELSON]: My reply was it's a misdemeanor. You cannot go in my house for that.
He further testified on cross-examination that he had not told the officers he would show them where the marijuana was:
 Q. And you, in fact, said I'll show you where the marijuana [is], but you can't search my apartment?
 A. No, I didn't.
The closest he came to arguing to the trial court that his consent was involuntary is that his lawyer may have hinted at it during his closing argument at the suppression hearing:
 The officers that testified, some say that they had their guns out, some say that they didn't. Clearly, there is a show of force surrounding this house. Anywhere from up to 12 officers are surrounding this house in what I would call a confrontational situation, trying to find shooters who were no way, or shape and form tied to this particular case.
 {¶ 9} If a defendant fails to call a claimed error to the trial court's attention at a time when it can be avoided or corrected, he forfeits the right to argue that error on appeal. State v.Williams, 51 Ohio St. 2d 112, paragraph one of the syllabus (1977), vacated in part on other grounds, 438 U.S. 911 (1978). In this case, it appears that Mr. Nelson tried one argument before the trial court, that he did not consent to the officers entering his house, and that argument having failed, has made a different argument to this Court, that his consent was coerced. Even if he had not forfeited his coercion argument, however, this Court would still be required to overrule it. *Page 7 
 {¶ 10} This Court has held that, in reviewing a trial court's ruling on a motion to suppress, it will accept the trial court's factual findings unless they are not supported by some competent and credible evidence. E.g., State v. Metcalf, 9th Dist. No. 23600, 2007-Ohio-4001, at ¶ 6; but see id., at ¶ 14 (Dickinson, J., concurring). In this case, probably because Mr. Nelson did not argue that his consent was coerced, the trial court did not explicitly find that it was voluntarily given. It did implicitly find that it was voluntary: "[Subsequent to Nelson stating he didn't want his house searched, he did agree to show Akron Police the marijuana that was subject of discussion following Griffin's appearance on the porch." The issue presented by Mr. Nelson's assignment of error, therefore, is whether the trial court's implicit finding that his consent was voluntarily given was supported by some competent and credible evidence.
 {¶ 11} Mr. Nelson has argued to this Court that up to 12 officers surrounded his house with guns drawn, and repeatedly disputed his right to refuse them entry. Both Mr. Nelson and a neighbor testified that he told officers they could not enter his house. Further, Mr. Nelson testified that all the officers had their guns drawn.
 {¶ 12} Five of the officers who had been at Mr. Nelson's home testified at the suppression hearing. One said that he and other officers had taken their guns from their holsters when they first arrived and were on the perimeter of the house. He further testified that, by the time Mr. Nelson and his two companions had exited the house, the officers had holstered their guns and did not again draw *Page 8 
them. The other four testified that they did not see any of the officers present at the house with their guns drawn, except one testified that, after Mr. Nelson had been arrested, that officer had his gun in his hand as he participated in the "protective sweep."
 {¶ 13} As mentioned previously, Mr. Nelson testified that he never told officers they could enter his home. Officer Schismenos and two other officers testified that, upon being informed that the officers smelled marijuana, Mr. Nelson, without being asked, volunteered that he would show the officers where the marijuana was and led them to his dining room.
 {¶ 14} The trial court's implicit finding that Mr. Nelson's consent for the officers to enter his house so he could show them the marijuana was voluntary is supported by the officers' testimony and, therefore, by competent and credible evidence. Accordingly, it is not against the manifest weight of the evidence.
 {¶ 15} This Court notes that Mr. Nelson has not challenged either the "protective sweep" that followed his arrest or the search warrant that grew out of that protective sweep. See State v. White, 9th Dist. No. 23522, 2008-Ohio-657, at ¶ 23. His sole assignment of error is overruled.
 CONCLUSION {¶ 16} Mr. Nelson's assignment of error is overruled. The judgment of the Summit County Common Pleas Court is affirmed.
 Judgment affirmed. *Page 9 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
CARR, P. J., CONCURS IN JUDGMENT ONLY
 MOORE, J., CONCURS IN JUDGMENT ONLY